# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXEL STALLMAN,<br><br>                                    Plaintiff,<br><br>v.<br><br>UNIVERSITY OF ST. AUGUSTINE<br>FOR HEALTH SCIENCES, LLC,<br><br>                                    Defendant. | Case No.:  25-cv-02631-H-DDL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>[Doc. No. 11.] |

On December 15, 2025, Defendant University of St. Augustine for Health Sciences, LLC filed a motion to dismiss Plaintiff Axel Stallman's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (Doc. No. 11.)  On February 23, 2026, Plaintiff filed his response in opposition to Defendant's motion.  (Doc. No. 22.)  On March 9, 2026, Defendant filed its reply.  (Doc. No. 24.)  On March 9, 2026, the Court took the motion under submission.  (Doc. No. 26.)  For the reasons below, the Court grants Defendant's motion to dismiss, and the Court dismisses Plaintiff's first amended complaint with leave to amend.

/ / /

/ / /

/ / /

25-cv-02631-H-DDL

**Background**

The following factual background is taken from the allegations in Plaintiff's first amended complaint.  In July 2021, Plaintiff enrolled as a student at Defendant University of St. Augustine for Health Sciences, LLC in the Occupational Therapy Program.  (Doc. No. 5, FAC ¶ 26.)  Due to the COVID-19 pandemic, Plaintiff began at the University with virtual coursework, and, during the third trimester of the 2020-2021 school year, Plaintiff began attending full-time, in-person classes at the University.  (Id. ¶¶ 27–28.)

Plaintiff alleges that while at the University he was subjected to this peer-on-peer anti-male sexual harassment "from the third trimester of the 2020-2021 school year until December 17, 2021."  (Id. ¶ 37.)  Plaintiff further alleges that he reported this peer-on-peer sexual harassment to his advisor in the Occupational Therapy Program and to at least three of his professors.  (See id. ¶¶ 38–40, 49.)  Plaintiff alleges that his advisor and the professors had authority to remedy the harassment, but they did not take any action to address the harassment or institute corrective measures.  (See id. ¶¶ 44, 51, 57.)  Plaintiff alleges that he "was forced to take a leave of absence from the Occupational Therapy Program starting on December 17, 2021 as a result of the known yet unaddressed peer harassment."  (Id. ¶ 63.)

Plaintiff alleges that he returned to the University from his leave of absence on January 9, 2023, and he began his clinical placement in March 2023.  (Id. ¶¶ 64, 72.)  Plaintiff alleges that his clinical fieldwork educator sexually harassed him throughout his clinical placement. (See id. ¶¶ 73–79.)  Plaintiff alleges that, on July 31, 2023, he submitted a written report of the instructor's harassing behavior to the University's Occupational Program Director.  (See id. ¶¶ 89–90.)  Plaintiff further alleges that, on August 3, 2023, he met with the Occupational Program Director and the Academic Fieldwork Coordinator and discussed the alleged harassment.  (Id. ¶ 98.)  Plaintiff alleges that the Occupational Program Director and the Academic Fieldwork Coordinator had authority to address the alleged harassment, but neither took any actions to address the alleged harassment.  (See id. ¶¶ 93–94, 100.)  Plaintiff alleges that the Occupational Program Director eventually

25-cv-02631-H-DDL

awarded Plaintiff an "F" grade for his final clinical rotation, and, on August 9, 2023, the University informed Plaintiff that he was being dismissed from the program due to the failing grade. (See id. ¶¶ 101, 102.)

Plaintiff appealed his dismissal through the process mandated by the University's handbook. (Id. ¶ 103.) On September 9, 2023, the Academic Appeals Committee denied Plaintiff's first appeal and affirmed his dismissal; on September 18, 2023, the Associate Dean of the University's College of Rehabilitative Sciences for Occupational Therapy denied Plaintiff's second appeal and affirmed his dismissal; and, on October 4, 2023, the University's President and Chief Academic Officer denied Plaintiff's third and final appeal and affirmed his dismissal. (See id. ¶¶ 104, 114–15, 127–28, 133.)

On October 3, 2025, Plaintiff filed a complaint against Defendant, alleging a single claim for deliberate indifference to gender harassment under Title IX of the Education Act of 1972. (Doc. No. 1, Compl. ¶¶ 157–218.) On October 14, 2025, the Court denied Plaintiff's motion to proceed under a pseudonym. (Doc. No. 4.) On October 15, 2025, Plaintiff filed a first amended complaint, alleging a single claim for deliberate indifference to gender harassment under Title IX. (Doc. No. 5, FAC ¶¶ 157–218.)

By the present motion, Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's first amended complaint for failure to state a claim. (Doc. No. 11-1 at 1, 16.) Specifically, Defendant argues that the sole Title IX claim in the first amended complaint is barred by the applicable two-year statute of limitations. (See id.)

## Discussion

### I.    Legal Standards for a Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011) (citing Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is

3

entitled to relief." The function of this pleading requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "'accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)). But a court need not accept "legal conclusions" as true. Iqbal, 556 U.S. at 678. "Further, it is improper for a court to assume the claimant "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. See Doe

4

v. United States, 58 F.3d 494, 497 (9th Cir. 1995); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

**II.     Analysis**

Defendant argues that Plaintiff's first amended complaint should be dismissed for failure to state a claim because Plaintiff's Title IX claim for deliberate indifference is time-barred as a matter of law.  (Doc. No. 11-1 at 4.)  Specifically, Defendant argues that Plaintiff's Title IX claim has a two-year statute of limitations, and all of the instances of alleged sexual harassment contained in the complaint occurred more than two years before Plaintiff filed his complaint on October 3, 2025.  (Id.)

A.     Statute of Limitations for Title XI Claims

The Ninth Circuit has explained that if the running of the statute of limitations is apparent on the face of the complaint, the defense may be raised by a Rule 12(b)(6) motion to dismiss.  See Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1045 (9th Cir. 2011); Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).  "Title IX claims are subject to the applicable state statute of limitations for personal injury actions." Stanley v. Trustees of California State Univ., 433 F.3d 1129, 1136 (9th Cir. 2006). California's personal injury statute of limitations is—and has been at all times relevant to this suit—two years.  See id.; Cal. Civ. P. Code § 335.1; Karasek v. Regents of Univ. of California, 500 F. Supp. 3d 967, 979 (N.D. Cal. 2020).

"Although Title IX borrows a state statute of limitations period, federal law governs the 'determination of the point at which the limitations period begins to run.'"  Stanley, 433 F.3d at 1136.  "[T]he touchstone for determining the commencement of the limitations period is notice: a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action."  Id. (internal quotation marks omitted).  "'The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.'"  Id.

Plaintiff filed the present complaint on October 3, 2025.  (See Doc. No. 1, Compl.) Thus, in order to satisfy the two-year statute of limitations for Title IX claims in California,

Plaintiff's Title IX deliberate indifference claim needs to have accrued no earlier than October 3, 2023.

The injury which is the basis of Plaintiff's action here is a claim of deliberate indifference to sexual harassment by the Defendant University. (See Doc. No. 5, FAC ¶¶ 157–218.) The elements of this type of deliberate indifference claim are as follows:

> First, the school must have "exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red]." Second, the plaintiff must have suffered harassment "that is so severe, pervasive, and objectively offensive that it can be said to deprive the [plaintiff] of access to the educational opportunities or benefits provided by the school." Third, a school official with "authority to address the alleged discrimination and to institute corrective measures on the [school's] behalf" must have had "actual knowledge" of the harassment. Fourth, the school must have acted with "deliberate indifference" to the harassment, such that the school's "response to the harassment or lack thereof [was] clearly unreasonable in light of the known circumstances." This is a fairly high standard—a "negligent, lazy, or careless" response will not suffice. Instead, the plaintiff must demonstrate that the school's actions amounted to "'an official decision . . . not to remedy'" the discrimination. And fifth, the school's deliberate indifference must have "subject[ed the plaintiff] to harassment." Put differently, the school must have "cause[d the plaintiff] to undergo harassment or ma[d]e [the plaintiff] liable or vulnerable to it."

Karasek v. Regents of Univ. of California, 956 F.3d 1093, 1105 (9th Cir. 2020) (citations omitted) (citing Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 644–45, 648, 650 (1999)).

Plaintiff's Title IX deliberate indifference claim here is actually two separate claims. One claim is based on Defendant's alleged deliberate indifference to Plaintiff's reporting of peer-on-peer anti-male sexual harassment. (See Doc. No. 5, FAC ¶¶ 161, 163–88.) And the other claim is based on Defendant's alleged deliberate indifference to Plaintiff's reporting of instructor-to-student anti-male sexual harassment. (See id. ¶¶ 161, 188–218.) The Court addresses the accrual date for each of these two claims in turn below.

For the alleged deliberate indifference to peer-on-peer sexual harassment, Plaintiff alleges that he was subjected to this peer-on-peer sexual harassment "from the third

25-cv-02631-H-DDL

trimester of the 2020-2021 school year until December 17, 2021." (Doc. No. 5, FAC ¶ 37.) Plaintiff further alleges that he reported this peer-on-peer sexual harassment to his advisor in the Occupational Therapy Program and to at least three of his professors. (See id. ¶¶ 38–40, 49.) Plaintiff alleges that his advisor and the professors had authority to remedy the harassment, but they did not take any action to address the harassment or institute corrective measures. (See id. ¶¶ 44, 51, 57.) Plaintiff alleges that this inaction by the university officials led to additional instances of harassment and otherwise left Plaintiff vulnerable to harassment. (See id. ¶¶ 48, 53.) Plaintiff then alleges that he "was forced to take a leave of absence from the Occupational Therapy Program starting on December 17, 2021 as a result of the known yet unaddressed peer harassment." (Id. ¶ 63.)

Based on these allegations, Plaintiff's claim based on Defendant's alleged deliberate indifference to Plaintiff's reporting of peer-on-peer sexual harassment accrued by at least December 17, 2021 – almost four years prior to the filing of the present complaint. Based on the allegations in the complaint, by December 17, 2021, Plaintiff knew he had been subjected to peer-on-peer sexual harassment, had reported the alleged harassment to people within the University with authority to address the harassment, but no action was taken, and Plaintiff suffered harm from that alleged inaction, including being subjected to additional instances of harassment. Thus, by December 17, 2021, Plaintiff knew or had reason to know of the injury that forms the basis for his Title IX post-harassment deliberate indifference claim based on peer-to-peer sexual harassment. See, e.g., Samuelson v. Oregon State Univ., 725 F. App'x 598, 599 (9th Cir. 2018) (analyzing the proper accrual date for the plaintiff's Title IX claim for deliberate indifference and holding: "Here, Samuelson's injury occurred, and she was fully aware of the injury and its consequences, when she dropped out of school in 2000."). Further, because Plaintiff's claim under Title IX for deliberate indifference to peer-on-peer sexual harassment accrued by at least December 17, 2021, and December 17, 2021 is almost four years before October 3, 2025 (the date Plaintiff filed the present action), Plaintiff's post-harassment deliberate indifference claim based on peer-on-peer sexual harassment is barred by the applicable

two-year statute of limitations.

For the alleged deliberate indifference to instructor-to-student sexual harassment, Plaintiff alleges that he returned from his leave of absence on January 9, 2023, and he began his clinical placement in March 2023. (Doc. No. 5, FAC ¶¶ 64, 72.) Plaintiff alleges that his clinical fieldwork educator sexually harassed him throughout his clinical placement. (See id. ¶¶ 73–79.) Plaintiff alleges that, on July 31, 2023, he submitted a written report of the instructor's harassing behavior to the University's Occupational Program Director. (See id. ¶¶ 89–90.) Plaintiff further alleges that, on August 3, 2023, he met with the Occupational Program Director and the Academic Fieldwork Coordinator and discussed the alleged harassment. (Id. ¶ 98.) Plaintiff alleges that the Occupational Program Director and the Academic Fieldwork Coordinator had authority to address the alleged harassment, but neither took any action to address the alleged harassment. (See id. ¶¶ 93–94, 100.) Plaintiff alleges that this inaction exacerbated the harassment he suffered and left him vulnerable to further harassment. (See id. ¶ 95.) Plaintiff alleges that the Occupational Program Director eventually awarded Plaintiff an "F" grade for his final clinical rotation, and, on August 9, 2023, the University informed Plaintiff that he was being dismissed from the program due to the failing grade. (See id. ¶¶ 101, 102.)

Based on these allegations, Plaintiff's claim based on Defendant's alleged deliberate indifference to Plaintiff's reporting of sexual harassment by his clinical fieldwork educator accrued by at least August 9, 2023. Based on the allegations in the complaint, by August 9, 2023, Plaintiff knew that he had been subjected to instructor-to-student sexual harassment, had reported the alleged harassment to people within the University with authority to remedy the harassment, but no action had been taken, and he suffered harm from that alleged inaction, including being made vulnerable to further harassment. Thus, by at least August 9, 2023, Plaintiff knew or had reason to know of the injury that is the basis of his current Title IX deliberate indifference claim based on instructor-to-student sexual harassment. See, e.g., Samuelson, 725 F. App'x at 599. Further, because Plaintiff's claim under Title IX for deliberate indifference to instructor-to-student sexual harassment

25-cv-02631-H-DDL

accrued by at least August 9, 2023, and August 9, 2023 is over two years before October 3, 2025 (the date Plaintiff filed the present action), Plaintiff's deliberate indifference claim based on instructor-to-student sexual harassment is barred by the applicable two-year statute of limitations.

Plaintiff argues that the accrual date for his deliberate indifference claim should be October 4, 2023, the date the University denied his third and final appeal of his dismissal. (See Doc. No. 22 at 4–15.)  Plaintiff is wrong.  A claim accrues "when a plaintiff knows or has reason to know of the injury which is the basis of his action."  Stanley, 433 F.3d at 1136.  "[T]he "injury" which is the basis of a post-harassment/assault Title IX claim is the educational institution's deliberate indifference to the plaintiff's experience of sexual misconduct that then causes him or her to experience further sexual misconduct or makes him or her vulnerable to it."  Barnett v. Kapla, No. 20-CV-03748-JCS, 2020 WL 6737381, at *8 (N.D. Cal. Sept. 28, 2020); see also, e.g., Samuelson v. Oregon State Univ., 162 F. Supp. 3d 1123, 1134–35 (D. Or. 2016) (finding accrual date for deliberate indifference claim when the University "was in fact deliberately indifferent to [Plaintiff's] own report of the assault").  Based on the allegations in the first amended complaint, by at least December 17, 2021, Plaintiff knew or had reason to know of Defendant's alleged deliberate indifference to his reporting of peer-to-peer sexual harassment, and, by at least August 9, 2023, Plaintiff knew or had reason to know of Defendant's alleged deliberate indifference to his reporting of instructor-to-student sexual harassment.  Thus, those are the proper accrual dates for Plaintiff's deliberate indifference claims, see id., and the denial of Plaintiff's third and final appeal of his dismissal has no effect on those accrual dates.  See, e.g., Camarata v. Portland Cmty. Coll., No. 3:19-CV-00738-HZ, 2019 WL 4723769, at *1, 3 (D. Or. Sept. 26, 2019) (finding accrual date to be the date the plaintiff received an email notifying him that he was suspended despite the fact that the plaintiff subsequently appealed that suspension decision); see also Stanley, 433 F.3d at 1136 ("'The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.'"); Doe v. Univ. of S. California, No.

25-cv-02631-H-DDL

218CV09530SVWGJS, 2019 WL 4229750, at *4 (C.D. Cal. July 9, 2019) (same).

In arguing for a later accrual date, Plaintiff relies heavily on the district court decision in Karasek v. Regents of University of California, 500 F. Supp. 3d 967 (N.D. Cal. 2020). (See Doc. No. 22 at 5–9.) In response, Defendant argues that Plaintiff's reliance on Karasek is misplaced because the accrual date analysis and holding in Karasek involved a pre-assault/harassment deliberate indifference claim, not a post-assault/harassment deliberate indifference claim. (See Doc. No. 24 at 3 n.3, 5–7.) Defendant is correct.

A post-assault/harassment deliberate indifference claim (one based on an educational institution's deliberate indifference to the plaintiff's experience of assault/harassment) is different and distinct from a pre-assault/harassment deliberate indifference claim (one based on an educational institution's deliberate indifference to harassment prior to the plaintiff's experience of the assault/harassment). See Karasek, 956 F.3d at 1105, 1112 (citing Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 645–50 (1999)); Barnett v. Kapla, No. 20-CV-03748-JCS, 2020 WL 6737381, at *6 (N.D. Cal. Sept. 28, 2020). The first amended complaint only alleges claims for post-harassment deliberate indifference. Plaintiff alleges that he experienced sexual harassment, reported it to authorities within the University, and the University failed to take any action. (See Doc. No. 1, Compl. ¶¶ 161–218.) That is a post-assault/harassment deliberate indifference claim (one based on an educational institution's deliberate indifference to the plaintiff's experience of assault/harassment).

Plaintiff's first amended complaint does not allege any pre-harassment deliberate indifference claims. Notably, a required element for a pre-harassment deliberate indifference claim is the existence of "a school maintained a policy of deliberate indifference to reports of sexual misconduct[/harassment]." Karasek, 956 F.3d at 1112 (citing Davis, 526 U.S. at 650); accord Barnett, 2020 WL 6737381, at *6. Plaintiff's first amended complaint does not contain any plausible allegations showing that Defendant maintained a university-wide policy of deliberate indifference to reports of sexual

25-cv-02631-H-DDL

harassment.[1]  (See generally Doc. No. 5, FAC.)  As such, Plaintiff's reliance on the district court decision in Karasek is misplaced because the decision involved a pre-harassment deliberate indifference claim.  See Karasek, 500 F. Supp. 3d at 978 ("[A] plaintiff's Title IX pre-assault claim accrues when the plaintiff knows or has reason to know of the school's policy of deliberate indifference that created a heightened risk of harassment.).

In sum, Plaintiff's claim for deliberate indifference based on peer-to-peer sexual harassment accrued by at least December 17, 2021, meaning that the two-year limitations period for this claim expired by December 17, 2023.  And Plaintiff's claim for deliberate indifference based on instructor-to-peer sexual harassment accrued by at least August 9, 2023, meaning the two-year limitations period for this claim expired by August 9, 2025.  Plaintiff filed the present action on October 3, 2025, outside the limitations period for both claims.  (Doc. No. 1, Compl.)  As such, based on the allegations in the first amended complaint, Plaintiff's deliberate indifference claims are barred by the applicable two-year statute of limitations for Title IX claims.

B.     Continuing Violation Doctrine

Plaintiff argues that his claims are not barred by the statute of limitations because the continuing violation doctrine applies to his deliberate indifference claims.  (Doc. No. 22 at 15–20.)  In general, "[t]he continuing violations doctrine functions as an exception to the discovery rule of accrual 'allowing a plaintiff to seek relief for events outside of the limitations period.'"  Bird v. Dep't of Hum. Servs., 935 F.3d 738, 746 (9th Cir. 2019).

---

[1]     Plaintiff notes that in the FAC, he alleges that at least one female student was treated differently from him in that the University allowed her to remain in school even though she was terminated from her clinical assignment whereas the University dismissed Plaintiff.  (Doc. No. 22 at 6–7, 17 (citing Doc. No. 5, FAC ¶¶ 145-50).)  But an allegation that one female student in one instance was treated differently from Plaintiff with respect to a dismissal decision is not a plausible allegation that there is a university-wide policy of deliberate indifference to reports of sexual harassment.  The allegations regarding the female student do not even relate to the reporting of sexual harassment to university officials.

25-cv-02631-H-DDL

However, the Ninth Circuit has explained that, following the Supreme Court's decision in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002), "little remains of the continuing violations doctrine" outside of the context of hostile work environment claims. Bird, 935 F.3d at 748. Specifically, the Ninth Circuit in Bird explained that the continuing violations doctrine cannot be utilized to render timely "'a series of related acts, one or more of which falls within the limitations period.'" Id. at 746. In other words, "'discrete . . . acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges' because '[e]ach discrete . . . act starts a new clock for filing charges alleging that act.'" Id. at 747.

In light of the above, the continuing violation doctrine is not applicable to Plaintiff's claims here. Plaintiff is not alleging claims for hostile work environment. Rather, Plaintiff is alleging claims for deliberate indifference to reports of sexual harassment. Further, Plaintiff's proposed application of the continuing violation doctrine is for the Court to deem a series of acts that occurred over several years to all be timely simply because a single related act – the denial of Plaintiff's third and final appeal of his dismissal – occurred within the limitations period. This is the precise type of application of the continuing violation doctrine that the Ninth Circuit explained in Bird is impermissible following the Supreme Court's decision in Morgan. Plaintiff cannot use the continuing violation doctrine to render timely acts that occurred outside of the limitations period.[2] See Bird, 935 F.3d at 747.

---

[2]   Importantly, based on the allegations in the first amended complaint, the single act that occurred within the limitations period – the October 3, 2023 denial of Plaintiff's third appeal – does not on its own constitute a plausible and viable claim for deliberate indifference to sexual harassment. A required element of a claim for deliberate indifference to sexual harassment is that the school's alleged deliberate indifference must have "cause[d the plaintiff] to undergo harassment or ma[d]e [the plaintiff] liable or vulnerable to it." Karasek, 956 F.3d at 1105. There are no allegations in the first amended complaint specifically stating that the October 4, 2023 denial of Plaintiff's final appeal – on its own – caused Plaintiff to undergo further harassment or be made more vulnerable to it following the decision. (See generally Doc. No. 5, FAC ¶¶ 128–44.) To the contrary, the first amended complaint alleges that Plaintiff was dismissed from the University on

In arguing that the continuing violation doctrine renders his claims timely, Plaintiff relies heavily on the district court decision in Rankins v. United Parcel Serv., Inc., No. 23-CV-05785-JSC, 2024 WL 3416508 (N.D. Cal. July 15, 2024).  (See Doc. No. 22 at 15–17.)  Plaintiff's reliance on Rankins is misplaced.  The district court decision in Rankins involved a state law claim, and, thus, the district court utilized California state law in determining whether the continuing violation doctrine applied to the plaintiff's claim.  See Rankins, 2024 WL 3416508, at *3-4.  In contrast, here, Plaintiff brings his claims under a federal law, Title IX, and, therefore, federal law – not state law – governs the determination of when a Title IX claim accrues and whether the continuing violation doctrine applies.  See Stanley, 433 F.3d at 1136.  Therefore, the continuing violation analysis in Rankins is inapplicable to the present Title IX claims.  In sum, the Court rejects Plaintiff's contention that the continuing violation doctrine applies to his deliberate indifference claims.

C.      Equitable Tolling

Plaintiff argues that, in the event the Court determines that the original complaint was not filed within the applicable statute of limitations, equitable tolling applies to Plaintiff's claims.  (Doc. No. 22 at 20–23.)  "Although federal law supplies the date at which the statute of limitations to run, district courts are directed to consider state law rules governing the tolling of the limitations period, unless doing so 'would be inconsistent with the federal policy underlying the cause of action under consideration.'"  Doe, 2019 WL 4229750, at *5 (quoting Alexopulos v. S.F. Unif. Sch. Dist., 817 F.2d 551, 555 (9th Cir. 1987)).

Under California law, equitable tolling is a judicially created, non-statutory doctrine

---

August 9, 2023 and does not allege that Plaintiff had any subsequent interactions with his clinical fieldwork educator or any other students in the Program following that dismissal.  (See id. ¶¶ 68 ("At the time of his return from his leave of absence, Stallman had already completed the classroom portion of the Program . . . ."), ("On July 21, 2023, Stallman's clinical rotation was terminated . . . ."); 102 ("On August 9, 2023, USA informed Stallman that he was being dismissed from the Program . . . .").)

25-cv-02631-H-DDL

that suspends or extends a statute of limitations as necessary to ensure fundamental practicality and fairness. Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health, 9 Cal. 5th 710, 719 (2020) (citing McDonald v. Antelope Valley Community College Dist., 45 Cal.4th 88, 99 (2008)). "The doctrine applies 'occasionally and in special situations' to 'soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court.'" Id. (quoting Addison v. State, 21 Cal.3d 313, 316 (1978)). For equitable tolling to apply, the plaintiff must satisfy the following three elements: (1) timely notice; (2) lack of prejudice to the defendant; and (3) reasonable and good faith conduct by the plaintiff. Id. at 724 (citing Addison, 21 Cal.3d at 319).

To support his assertion of equitable tolling, Plaintiff notes that, on July 29, 2025, he filed a petition for writ of mandate in the Superior Court of the State of California, County of San Diego, challenging his dismissal from the university.[3] (See Doc. No. 22 at 22 (citing Doc. No. 22-1, Ex. B).) In response, Defendant argues that the petition for writ of mandate cannot form a basis for equitable tolling of Plaintiff's claims. (Doc. No. 24 at 9–10.) Defendant is correct.

The second equitable tolling element (the prejudice element) "'essentially translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." McDonald, 45 Cal. 4th 88, 102 n.2 (quoting Collier v. City of Pasadena, 142 Cal. App. 3d 917, 925 (Ct. App. 1983)). The two claims need not be "absolutely identical." Collier, 142 Cal. App. 3d at 925. "The critical question is whether notice of the first claim affords the defendant an opportunity to identify the sources of evidence which might be needed to defend against the second claim." Id. "'So long as the two claims are based on essentially the same set of facts timely investigation of the first claim should put the

---

[3]    Because it is a court filing, the Court may take judicial notice of the petition for writ of mandate. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

defendant in position to appropriately defend the second.'" Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1138 (9th Cir. 2001) (quoting Collier, 142 Cal. App. 3d at 925).

A review of the petition for writ of mandate shows that in the petition, Plaintiff challenged his dismissal from the University on the basis that the dismissal decision is invalid under California Code of Civil Procedure §§ 1085 and 1094.5, alleging that the university "proceeded without, or in excess, of jurisdiction, failed to provide a fair hearing, and exercised prejudicial abuse of discretion." (See Doc. No. 22-1, Ex. B ¶¶ 39–46.) The petition makes no mention of experiencing sexual harassment or deliberate indifference to sexual harassment by the University. (See generally id.) In light of this, the petition for writ of mandate is insufficient to satisfy the second element required for equitable tolling. A claim that a university failed to follow the proper procedures and requirements in making its dismissal decision relies on substantially different facts and evidence and involves a different wrong than a claim that the university was deliberately indifferent to reports of sexual harassment made by the plaintiff during his time at the university. Thus, a timely investigation of the claims in the petition for writ of mandate would not put Defendant in a position to fairly defend the current claims for deliberate indifference to sexual harassment that are contained in this action. In sum, because Plaintiff cannot satisfy the second element for equitable tolling, the Court rejects Plaintiff's assertion of equitable tolling based on the petition for writ of mandate. See Ervin v. Los Angeles Cnty., 848 F.2d 1018, 1019 (9th Cir. 1988) ("[U]nder California law . . . equitable tolling is inapplicable to a situation in which 'a plaintiff who allegedly suffered several different wrongs pursues only one remedy as to one of those wrongs.'" (quoting Loehr v. Ventura Community C. Dist., 147 Cal. App. 3d 1071, 1086 (1983))); Arnold v. United States, 816 F.2d 1306, 1312–13 (9th Cir. 1987) (declining to apply equitable tolling under California law because the wrong underlying the plaintiff's Title VII claim was "distinct from that underlying her

25-cv-02631-H-DDL

state-law tort claims").[4]

## Conclusion

For the reasons above, the Court grants Defendant's motion to dismiss Plaintiff's first amended complaint for failure to state a claim. The Court's dismissal of Plaintiff's first amended complaint is without prejudice and with leave to amend. See Telesaurus, 623 F.3d at 1003. Plaintiff may file a second amended complaint consistent with the analysis set forth in this order **within 30 days from the date this order is filed**.

**IT IS SO ORDERED.**

DATED: April 20, 2026

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[4] Plaintiff notes that the Ninth Circuit has explained that equitable tolling under California law involves a fact-intensive inquiry, and, therefore, the issue is generally better decided at the summary judgment stage rather than at the motion to dismiss stage of a case. (Doc. No. 22 at 21–22 (quoting Cervantes v. City of San Diego, 5 F.3d 1273, 1276 (9th Cir. 1993)).) This is true. But it is also true that in both Ervin and Arnold, the Ninth Circuit affirmed a district court's denial of equitable tolling at the motion to dismiss stage because the claims at issue were based on different wrongs. See Ervin, 848 F.2d at 1019; Arnold, 816 F.2d at 1307. And the Ninth Circuit in Cervantes approved of both the decision in Ervin and the decision in Arnold. See Cervantes, 5 F.3d at 1276 ("[I]n each of these unusual cases, some fact, evident from the face of the complaint, supported the conclusion that the plaintiff could not prevail, as a matter of law, on the equitable tolling issue."). Therefore, the issue of equitable tolling can appropriately be decided at the motion to dismiss stage in this situation.